UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD ST. CLAIR,** | Case No.: 1:13-CV-01317-BAM |
| **Plaintiff,** | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| **JPMORGAN CHASE BANK, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND U.S. BANK, N.A., AS TRUSTEE FOR WASHINGTON MUTUAL MORTGAGE PASS-THROUGH CERTIFICATES, WMALT SERIES 2007-OA3** | |
| **Defendants.** | |

## I.  INTRODUCTION

Plaintiff Richard St. Clair filed this wrongful foreclosure action on August 19, 2013. (Doc. 2.) Plaintiff alleges Defendants JP Morgan Chase Bank, N.A. ("JP Morgan"), U.S. Bank, N.A., As Trustee For Washington Mutual Mortgage Pass-through Certificates, WMalt Series 2007-OA3 ("U.S. Bank"), and Mortgage Electronic Systems, Inc. ("MERS") (JP Morgan, U.S. Bank, and MERS are collectively referred to as "Defendants") violated numerous California laws in foreclosing on Plaintiff's property.

On October 3, 2013, MERS and U.S. Bank filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 13.)  On November 4, 2013, JP Morgan filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.)  Plaintiff opposed the motions, and Defendants filed reply briefs. (Doc. 26-31.) On January 23, 2014, Senior District Judge Anthony W. Ishii vacated the hearing set for both motions, and took the motions under submission pursuant to Local Rule 230(g). (Doc. 34.) The parties subsequently consented to the jurisdiction of the United States Magistrate Judge, and this case was reassigned to the Honorable Barbara A. McAuliffe on August 18, 2014. (Doc. 44.)

Having thoroughly considered the parties' briefs and related filings, Defendants' Motions to Dismiss are GRANTED.[1]  Plaintiff's Complaint is DISSMISSED WITH LEAVE TO

---

[1] Defendants have filed separate requests for judicial notice. (Doc. 14, 19.) In general, a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

U.S. Bank and MERS request the Court take judicial notice of twenty-five exhibits.  (Doc. 14.)  Plaintiff disputes the truthfulness of the statements set forth in exhibits 1 through 7, 9, 11, 19, 20, and 23-25, which are documents relating to the subject property filed in the Fresno County Recorder's Office. These fourteen exhibits are matters of public record and capable of accurate determination, and they may be judicially noticed. *See Alvara v. Aurora Loan Services, Inc.*, No 09-1512, 2009 WL 1689640, at *1, n.3 (N.D. Cal. June 16, 2009); *See W. Fed. Sav. & Loan Ass'n v. Heflin Corp.,* 797 F.Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county's public record, including deeds of trust). Plaintiff also objects to exhibits 8, 10, 12-18, 21, and 22, which are court records of a previous owner's repeated attempts to file for protection under the bankruptcy code. Plaintiff argues these exhibits are irrelevant.  The Court agrees, and will not take notice of these exhibits. Whether the previous owners attempted to file for bankruptcy, even improperly, has no bearing on whether Plaintiff has stated claims for which relief can be granted.

JP Morgan requests this Court take judicial notice of seventeen exhibits.  (Doc. 19.) Exhibits 1 through 10 and 12 through 17 are copies of public records relating to the subject property, located in the official records of Fresno County. Exhibit 11 is the Purchase and Assumption Agreement entered into between the Federal Deposit Insurance Corporation and JP Morgan, whereby JP Morgan the deed of trust on the subject property from the FDIC. Plaintiff disputes the truthfulness of the statements set forth in exhibits 1 through 10 and 12 through 17. However, Exhibit 2 (the Deed of Trust), Exhibit 4 (the Notice of Default) , Exhibit 5 (the Assignment of Deed of Trust), Exhibit 6 (the Substitution of Trustee), Exhibit 7 (a Notice of Trustee's Sale), Exhibit 8 (the 2008 Trustee's Deed Upon Sale), Exhibit 9 (the Notice of Rescission of Trustee's Deed Upon Sale), Exhibit 10 (the 2008 Notice of Trustee's Sale), Exhibit 12 (the 2010 Notice of Trustee's Sale), Exhibit 13 (the 2010 Assignment of Deed of Trust), Exhibit 14 (the 2011 Notice of Trustee's Sale), Exhibit 16 (the Grant Deed transferring title to Plaintiff), Exhibit 15 (the 2012 Notice of Trustee's Sale), and Exhibit 17 (the Trustee's Deed Upon Sale) are each attached as exhibits to his Complaint. (See Complaint Exhs. A-N.)  The Court is permitted to rely upon documents attached to the operative complaint in deciding a motion to dismiss. *See, generally*, Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Regardless, because these exhibits are public records, the

1  AMEND.

2  **II.     FACTUAL HISTORY AND PROCEDURAL BACKGROUND**

3  On November 21, 2006, non-party Michele M. Contreras refinanced a previous loan by

4  securing a million dollar loan ("Contreras Loan"), encumbering the real property located at 1328

5  East Rosemont Lane, Fresno, California 93730 (the "Subject Property").

6  The Deed of Trust for the Contreras Loan identifies Loan Center of California, Inc., as the

7  original lender and Financial Title Co. as the trustee. The beneficiary of the Deed of Trust is

8  identified as "MERS (solely as nominee for Lender and Lender's successors and assigns) and the

9  successors and assigns of MERS." (ECF Doc. 14, Attachment #3 at p. 1).

10  In 2007, the Contreras Loan was allegedly sold to WMALT Series 2007-OA3, a

11  mortgage-backed securities trust ("WMALT Trust"). Plaintiff claims this sale constitutes a

12  "securitization," and that the "securitization" of the Loan extinguished the interests of the

13  previous beneficiaries to the Deed of Trust.

14  On January 12, 2008, an Assignment of Deed of Trust was executed by MERS as nominee

15  for Loan Center of California, Inc. in favor of Washington Mutual Bank ("WAMU"). In January

16  of 2008, Quality Loan Services ("Quality"), as agent for WAMU, executed a Notice of Default

17  and Election to Sell Under Deed of Trust ("Notice of Default") because Ms. Contreras defaulted

18  on her obligations under the Deed of Trust. The Notice of Default stated that Ms. Contreras

19  should contact WAMU, c/o Quality, to arrange for payments to stop the foreclosure.

20  On February 13, 2008, an Assignment of Deed of Trust was recorded, transferring MERS'

21  beneficial interest in the Deed of Trust to WAMU. In April of 2008, a Substitution of Trustee in

22  favor of Quality was recorded.

---

Court will take judicial notice of exhibits 1 through 10 and 12 through 17 for the same reasons discussed *supra*. Plaintiff also objects to exhibit 11 because the document is a private contract. However, this document is available on the FDIC official website, and this Court may verify the accuracy of the Purchase and Assumption Agreement by visiting the FDIC's official website. *See, e.g., Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1093-94 (N.D. Cal. 2009) (granting defendant's request for judicial notice of the "Purchase and Assumption Agreement" between Chase and the FDIC because the entire document was available online, from the FDIC's web site); *Brooks v. Wash. Mut. Bank*, 2012 U.S. Dist. LEXIS 165287, at *7 (N.D. Cal. Nov. 19, 2012) (finding that the Purchase and Assumption Agreement "is a document published by the federal government, a matter of public record, and its accuracy 'cannot reasonably be questioned.'"). JP Morgan's request for judicial notice is granted in its entirety.

In September of 2008, Chase acquired WAMU's assets and liabilities pursuant to a Purchase and Assumption Agreement. The parties disagree as to whether the Contreras Loan was among WAMU's assets; specifically, whether they comported with the chain of title protocol mandated by the Pooling and Servicing Agreement, Plaintiff argues securitization of the loan failed because the Contreras Loan was not assigned to the WMALT Trust until 2009, two years after the closing date of the trust. Plaintiff also argues the various assignments of the Contreras Loan did not comport with the chain of title protocol mandated by the Pooling and Servicing Agreement. Therefore, Plaintiff argues, any beneficial interest in the Contreras Loan did not pass to Chase.

On August 28, 2012, a Grant Deed was recorded purporting to transfer Contreras' interest in the Subject Property to Plaintiff, Richard St. Clair. The Grant Deed was apparently executed and notarized nearly a year before recordation, on August 30, 2011.

Between April of 2008 and October of 2012, Quality executed and recorded four Notices of Trustee's Sale in its capacity as trustee of the Deed of Trust.[2] On October 4, 2012 and October 8, 2012, respectively, Quality executed and recorded a fifth Notice of Trustee's Sale. On June 10, 2013, Quality conveyed the Subject Property to U.S. Bank at the Trustee's Sale. On June 20, 2013, a Trustee's Deed Upon Sale was recorded.

Plaintiff contends the foreclosure was wrongful, and that the Defendants never had the right to sell the property. On August 19, 2013, Plaintiff brought the present suit alleging seven causes of action: (1) wrongful foreclosure, (2) quiet title, (4) slander of title, (4) fraud, (5) cancellation of instruments, (6) violation of California Civil Code, Section 2934a(a)(1)(A), and (7) violation of Business and Professions Code, Section 17200, *et seq*. Plaintiff directs counts one, five, and seven against Defendant MERS. Plaintiff directs counts one through five and seven against Defendant U.S. Bank. Plaintiff directs counts one through three and five through seven against Defendant Chase.

---

[2] Multiple Notices of Default and Trustee's Sale were entered because the Contreras' filed for protection under the Bankruptcy code after each Notice was entered.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). All allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Although a plaintiff need not set forth detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct 1955 167 L.Ed.2d 929 (2007). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is not "undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment …" *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct 227, 9 L.Ed.2d 222 (1962). Consideration of prejudice to the opposing party is given the most consideration. *Id*. (citing *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).

### IV. DISCUSSION

**A.      Plaintiff's Central Allegations**

All of Plaintiff's claims derive from Plaintiff's theory that Defendants lacked standing to foreclose on the Subject Property. Pl.'s Opp., Doc. 26, 6: 9-10 ("The thrust of Plaintiff's complaint is that none of the named party defendants had standing to sell [Plaintiff's] property in foreclosure.")

Plaintiff's advances two alternative positions in suggesting Defendants lacked standing to foreclose Plaintiff's property. Primarily, Plaintiff argues the securitization of Contreras Loan,

5

i.e., the sale of the Contreras Loan to the WMALT Trust, extinguished all beneficial interest held by the original lender (Loan Center of California, Inc.) and its nominee, MERS.  As a result, the subsequent assignments were invalid, the foreclosing Defendants never owned any interest in the Loan, and the foreclosure was unlawful.

Alternatively, Plaintiff argues that securitization failed because the Contreras Loan was never properly assigned according to the chain of title protocol mandated by the Pooling and Servicing Agreement, other trust documents, or the Internal Revenue Code's requirements. Because securitization of the Loan failed, the foreclosing Defendants never acquired any interest in the Deed of Trust and never had the right to foreclose the Subject Property.

**B.       Plaintiff's Central Allegations Fail As a Matter of Law[3]**

   **1.       "Securitization" did not extinguish interest held by parties to the Deed of Trust**

The crux of Plaintiff's cause of action for wrongful foreclosure is premised on his allegation that the "securitization" of the Contreras Loan extinguished the interests of the beneficiaries to the Deed of Trust. Plaintiff alleges that MERS' assignment of the Deed of Trust to WAMU is void and that "[t]he NOD, Substitution of Trustee and NOTS1, NOTS 2 and NOTS 3[,] [which] flow from the illegal assignment…are, likewise, null and void." (ECF Doc. 2 at 11:9-10).

Numerous district courts have rejected the argument that parties lose interest in a loan when it is assigned to a trust pool. *See Gieseke v. Bank of America, N.A.*, No. 13-cv-04772-JST (N.D. Cal. Feb. 23, 2014) ("[a]s numerous district courts in this state have recognized, 'a defendant bank does not invalidate its ability to enforce the terms of a deed of trust if the loan is assigned to a trust pool or Real Estate Mortgage Investment Conduit ("REMIC")'"; *Lane v. Vitek Real Estate Industries Group,* 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) ("The argument that

---

[3] It is possible some of Plaintiff's theories may have an independent basis aside from his securitization arguments. However, Plaintiff's standing arguments permeate all of Plaintiff's claims, and the Court's review of Plaintiff's Complaint shows that Plaintiff's Complaint, as it is currently pled, is entirely dependent on Plaintiff's securitization arguments.  To the extent Plaintiff alleges claims independent of his standing theories, Plaintiff may resubmit those allegations in an amended complaint.

6

parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."); *see also Rivac v. Ndex W. LLC,* No. 13–cv–1417 PJH, 2013 WL 6662762, at *4 (N.D. Cal. Dec. 17, 2013) ("[t]he power of sale is not nullified when a loan is securitized"). This is because "securitization merely creates a separate contract, distinct from Plaintiff's debt obligations under the note." *Reyes v. GMAC Mortg. LLC*, No. 2:11-CV-100, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (internal quotations omitted)). Securitization has no legal impact on the legal positions of the original parties to the note and deed of trust. *Sami v. Wells Fargo Bank,* No. 12-cv-00108-DMR, 2012 WL 967051, at *5 (N.D. Cal., Mar. 21, 2012).

Defendants did not lose the ability to exercise their authority under the deed of trust due to the purported "securitization." All of Plaintiff's claims are predicated on the incorrect assumption that securitization extinguished Defendants' interests in the Contreras Loan. Accordingly, Plaintiff's claims fail as a matter of law.

**2.     Plaintiff Does Not Have Standing to Challenge Securitization**

Alternatively, Plaintiff suggests Defendants did not have to right to foreclose on the Subject Property because their attempts at securitization failed. The majority position is that a plaintiff lacks standing to challenge noncompliance with a pooling and service agreement ("PSA") unless the plaintiff is a party to the PSA or a third party beneficiary of the PSA. *See Aniel v. GMAC Mortg., LLC,* No. C-12-4201, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2 2012) (collecting cases); *Armeni v. America's Wholesale Lender,* No. CV-11-8537, 2012 WL 603242, at *2 (C.D. Cal. Feb. 24, 2012) (granting defendants' motion to dismiss plaintiff's claims insofar as they challenge the validity of the securitization process on grounds that plaintiff was not a party to the PSA). Indeed, this district recently followed the majority approach in holding that "'a plaintiff lack[s] standing to challenge the process in which [his] mortgage was securitized because [he is] not [a party] to the [relevant agreements].'" *Pugh v. JP Morgan Chase Bank, N.A.*, No. 2:13-CV-1141, 2013 WL 5739147, at *2 (E.D. Cal. Oct. 22, 2013) (citing *Deernick v. Heritage Plaza Mortg. Inc.*, No. 2:11-CV-01735, 2012 WL 1085520 at *5 (E.D.Cal. Mar. 30, 2012)).

1       Plaintiff relies on *Glaski v. Bank of America*, where a California court of appeal held that
2 a borrower had standing to challenge the assignment of a loan to a securitized trust, even though
3 he was not a party to or a beneficiary of the assignment agreement. *Glaski v. Bank of Am., Nat'l*
4 *Ass'n, 218 Cal.App.* 4th 1079, 1099 (Cal. Ct. App. 2013), *reh'g denied* (Aug. 29, 2013). However,
5 in direct conflict with *Glaski,* a different California Court of Appeal held that as "an unrelated
6 third party to the alleged securitization, and any other subsequent transfers of the beneficial
7 interest under [a] promissory note, [a plaintiff] lacks standing to enforce any agreements,
8 including the investment trust's pooling and servicing agreement, relating to such transactions.
9 Furthermore, even if any subsequent transfers of the promissory note were invalid, [plaintiff] is
10 not the victim of such invalid transfers because [his] obligations under the note remained
11 unchanged*." Jenkins v. JP Morgan Chase Bank, N.A*., 216 Cal.App.4th 497, 515, 156 Cal.Rptr.3d
12 912 (2013). Thus, under *Jenkins,* Plaintiff would not have standing to challenge the assignment
13 agreement because he did not allege that he was a party to or a beneficiary of the agreement.

14       *Glaski* is a nonbinding state appellate decision that has been largely rejected by federal
15 courts in the Ninth Circuit, including those in the Eastern District of California. *Pugh*, 2013 WL
16 5739147, at *2, n. 5 ("*Glaski* is not persuasive"); *Snell v. Deutsche Bank Nat. Trust Co.,* 2014
17 WL 325147 (E.D. Cal., Jan. 29, 2014) ("Numerous courts have subsequently expressed their
18 disagreement with *Glaski . . . .*") *Newman v. Bank of New York Mellon*, 1:12–CV–1629 AWI,
19 2013 WL 5603316 at *3 n. 2 (E.D. Cal. Oct.11, 2013) ("no courts have yet followed *Glaski* and
20 *Glaski* is in a clear minority on the issue. Until either the California Supreme Court, the Ninth
21 Circuit, or other appellate courts follow *Glaski,* this Court will continue to follow the majority
22 rule."); *See also, Gieseke v. Bank of America, N.A*., No. 13-cv-04772-JST (N.D. Cal. Feb. 23,
23 2014) ("Glaski represents a distinct minority view on the standing of third parties to enforce or
24 assert claims based on alleged violations of a PSA," and that "courts in ... [the Northern] District
25 have expressly rejected Glaski and adhered to the majority view that individuals who are not
26 parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the
27 PSA/securitization process.")

28

This Court adopts the majority position that Plaintiff lacks standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.  In is undisputed Plaintiff is not a party to the PSA, nor is Plaintiff a beneficiary to the PSA.  Until the California Supreme Court or the Ninth Circuit, follows *Glaski*, this Court will continue to follow the majority *Jenkins* rule. Therefore, Plaintiff's claims based on alleged violation of the PSA are not viable.

**C.     Leave To Amend**

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.' " *AmerisourceBergen Corp. v. Dialysis West, Inc.,* 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: . . . is futile." *Id.*

All of Plaintiff's claims appear to require an initial determination that Defendants never had standing to proceed with the foreclosure.  This predicate argument, however, fails as a matter of law. To the extent Plaintiff's claims are predicated either (1) an argument that securitization of the Contreras Loan extinguished any interest in the Loan that was subsequently assigned to Chase; or (2) a failure of securitization precluded any valid interest from being transferred to Chase, those claims are DISMISSED WITHOUT LEAVE TO AMEND. However, to the extent any claims in Plaintiff's Complaint exist independent of one of these findings, Plaintiff will be afforded the opportunity to amend his Complaint.

**ORDER**

For the foregoing reasons, Plaintiff's Complaint is DISMISSED WITH LEAVE TO AMEND.  Plaintiff shall file an amended complaint in accordance with the findings of this Order within 21 days of service of this order.

IT IS SO ORDERED.

Dated:   **September 18, 2014**                     /s/ Barbara A. McAuliffe
                                                                         UNITED STATES MAGISTRATE JUDGE

9